1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MITTS, | Case No.  1:12-cv-01284-AWI-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S SOCIAL SECURITY APPEAL BE GRANTED IN PART AND DENIED IN PART AND THAT THIS ACTION BE REMANDED FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

        Plaintiff Timothy Mitts ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act.  (ECF No. 1.)  This matter was referred to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 303.

        Plaintiff alleged that he suffered from a multitude of impairments, including but not limited to chronic obstructive pulmonary disease (COPD), degenerative disc disease, a prior stroke, hepatitis C, schizophrenia, and depression.  For the reasons set forth below, the undersigned recommends that Plaintiff's appeal be partially granted and that this matter be remanded to the Commissioner for further administrative proceedings.

/ / /

1

2

## I.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

3       Plaintiff filed her application for benefits under the Social Security Act on August 20,

4   2009.  (AR 109-112.)  Plaintiff alleged a disability onset date of December 31, 1991.  (AR 109.)

5   Plaintiff's application was denied initially on November 19, 2009 (AR 50) and then denied upon

6   reconsideration on April 22, 2010 (AR 59).   On May 10, 2010, Plaintiff filed a request for a

7   hearing.  (AR 64.)

8       On February 22, 2011, a hearing took place before Administrative Law Judge Daniel G.

9   Heely ("the ALJ").  (AR 26-47.)  Plaintiff was represented by an attorney at the hearing.  (AR

10  26.)  George Myers testified at the hearing as an impartial vocational expert.  (AR 27.)  On March

11  25, 2011, the ALJ issued his written determination that Plaintiff was not disabled within the

12  meaning of the Social Security Act.  (AR 10-21.)  The Appeals Council denied Plaintiff's request

13  for review on June 4, 2012.  (AR 1.)

14      **A.     Hearing Testimony**

15      Plaintiff testified that the highest grade of education he completed was the 11th grade.

16  (AR 30.)  Plaintiff does not have a high school diploma or a GED.  (AR 30.)  Plaintiff has not

17  attended any job training classes.  (AR 30.)  Plaintiff has not worked full time in the past fifteen

18  years.  (AR 30.)

19      Plaintiff testified that he cannot work "[b]ecause of [his] breathing and [his] left side."

20  (AR 30.)  Plaintiff had a prior stroke.  (AR 31.)  Plaintiff's breathing issues are from his chronic

21  obstructive pulmonary disease (COPD).  (AR 31.)  Plaintiff smoked for forty years, but testified

22  that he quit four months prior to the hearing.  (AR 31.)  Plaintiff uses a nebulizer for breathing

23  treatments three times a day for five to ten minutes at a time.  (AR 41.)

24      Plaintiff reported that he "can hardly use [his] left arm."  (AR 32.)  Plaintiff reported

25  carpal tunnel on his left side.  (AR 32.)  Plaintiff has not received surgery since an accident in

26  1979, where he received steel plates in his right leg.  (AR 32.)  Plaintiff also reported constant

27

28

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 12.)

1   pain in his lower back as well as pain in his shoulders and legs.  (AR 40, 42.)

2         Plaintiff testified that he has been sober from alcohol and drugs since September 11, 2007.

3   (AR 32-33.)  Plaintiff was arrested on September 10, 2007 for possession of cocaine, but reported

4   being clean since.  (AR 33.)  Plaintiff was released from prison on May 8, 2009.  (AR 33.)

5         Plaintiff currently lives in a drug treatment house.  (AR 35.)  Plaintiff performs chores at

6   the house such as wiping the kitchen counter, sweeping and mopping the floors, and making his

7   bed.  (AR 36.)  Plaintiff attends Narcotics Anonymous meetings in the mornings for one and a

8   half hours, Monday through Friday.  (AR 37.)  Plaintiff also attends Alcoholics Anonymous

9   meetings on Saturday and Sunday.  (AR 38.)

10        Plaintiff gets around via the city bus.  (AR 38.)  Plaintiff goes grocery shopping at a

11  FoodMaxx two blocks down the street, which he walks to.  (AR 38.)  Plaintiff "leave[s] early for

12  everywhere [he] has got to go, because [he] can't walk fast."  (AR 40.)  Plaintiff can sometimes

13  walk the two blocks without stopping, but "a lot of times ... will have to stop for a minute and

14  catch [his] breath or – because of [his] back or [his] leg."  (AR 40.)

15        Plaintiff watches three to four hours of television a day.  (AR 39.)  Plaintiff can take care

16  of his personal needs, but has problems dressing, tying his shoes, buttoning his clothes and

17  getting in a car because his left arm "hardly works at all."  (AR 41-42.)

18        Plaintiff testified that he can sit for about a half hour to an hour before he would have to

19  stand up.  (AR 42.)  Plaintiff could stand for about an hour before he would have to sit down.

20  (AR 42.)  Plaintiff can walk for a couple blocks before he has to stop.  (AR 42.)  Plaintiff cannot

21  lift "hardly anything" with his left hand and can lift ten to twenty pounds with his right hand.

22  (AR 42.)

23        **B.**      **VE Testimony**

24        The VE was given the following first hypothetical limitations:

25      •   Can sit, stand and walk for six hours out of an eight hour day, with normal breaks;

26      •   Can lift or carry less than ten pounds occasionally;

27      •   Cannot climb, balance, stoop, kneel, crouch, crawl or work around hazards;

28      •   Needs numerous, unscheduled rest breaks; and

- Does not have sufficient concentration for even simple, routine tasks.

(AR 44.)  The VE testified that someone with those hypothetical limitations could not perform any work.  (AR 44.)

The VE was given the following second hypothetical limitations:

- Can sit, stand or walk for six hours out of an eight hour day;
- Can lift and carry fifty pounds occasionally and twenty-five pounds frequently;
- Cannot climb ladders, ropes or scaffolds;
- Can occasionally climb ramps or stairs;
- Cannot work around hazards;
- Cannot work around concentrated fumes, odors, dust, smoke or other environmental irritants; and
- Can perform simple routine tasks.

(AR 44.)  The VE testified that someone with those hypothetical limitations could perform jobs such as dishwasher, linen-room attendant and sandwich maker.  (AR 44-45.)

The VE was given the following third hypothetical limitation, which was identical to the second hypothetical but with the additional limitation of only occasional use of the non-dominant hand for any activity.   (AR 45.)   The VE testified that someone with those hypothetical limitations could not perform any work.  (AR 45.)

## C.      Plaintiff's Medical Records

Plaintiff's medical records include medical records from the California Department of Corrections and Rehabilitation (AR 174-299, 383-412), a psychological disability evaluation from examining psychological assistant Deborah von Bolschwing, Ph.D (AR 300-303), a case analysis from non-examining physician Dr. I. Ocrant, M.D. (AR 304-306), a psychiatric review technique from non-examining psychologist Klein (AR 307-320), treatment records from Golden Valley Health Centers (AR 330-333), a case analysis from non-examining physicians Dr. E. Aquino-Caro, M.D. and Dr. Paulette M. Harar, M.D./MPH (AR 334), treatment records from Health Services Agency (AR 340-352) and several "questionnaires" signed by physician's assistant John Kitchell and Dr. Westrup (AR 353-355, 462, 471, 482).

4

A February 8, 2008 "lumbar spine series, three views" report referenced "[m]oderate spondylosis seen of the lumbar spine."  (AR 190.)  A "Physician Request for Services" form dated April 16, 2008 indicates that a physician ordered an MRI of Plaintiff's spine due to "chronic back pain" and "mild weakness (L) quad."  (AR 178.)  On May 7, 2008, Plaintiff received an MRI of his spine.  (AR 189.)  The "impressions" include "[m]ild congenital narrowing of the bony dimensions of the spinal canal at the L4 and L5 levels," "[m]ild annular bulge of the L3-L4 disc without herniated nucleus pulposus or stenosis," "[b]road-based posterior disc bulge of the desiccated L4-L5 disc," and "[n]ormal conus medullaris."  (AR 189.)

A July 12, 2008 record indicates that Plaintiff received a CT scan of his head showing "[m]ild volume loss.  Old right frontal parietal infarct."  (AR 199.)  It is unclear what circumstances prompted this CT scan.

On August 13, 2009, Plaintiff was seen by at Golden Valley Health Center in Modesto, California.  (AR 331-332.)  Plaintiff reported that he experienced pain in his back and has been in pain for seven years.  (AR 331.)  Plaintiff showed up to establish care, having recently been released from prison.  (AR 331.)  Plaintiff was diagnosed with hypertension, hypothyroidism and "[b]ackache, unspecified."  (AR 332.)

On October 30, 2009, Dr. I. Ocrant, M.D. authored a case analysis as a non-examining physician reviewing Plaintiff's medical record.  (AR 304-306.)  Dr. Ocrant cited the prior medical records and concluded that "l/s MRI showed mild findings; current PE was basically normal. Propose Non-Severe."  (AR 305.)

On April 6, 2010, Dr. E. Aquino-Caro, M.D. and Dr. Paulette M. Harar M.D./M.P.H. authored a case analysis as non-examining physicians reviewing Plaintiff's medical record.  (AR 334.)  They noted that Plaintiff's history of "inconsistencies & questionable psychotic symptoms vs drug-seeking behavior," evidence of malingering and affirmed the prior determination that Plaintiff's mental and physical impairments are non-severe.  (AR 334.)

On September 7, 2010, Plaintiff received a CT scan of his head due to "[n]eurologic deficit possibly related to old stroke."  (AR 344, 349.)  Dr. Matthew D. Lynn, M.D. wrote that "[n]o acute intracranial abnormality is seen" but "[t]here is a large area of encephalomalacia seen

1  right parietal lobe consistent with old infarct." (AR 344, 349.)

2          Dr. Gurpreet S. Dhaliwal, M.D. authored an "Electrodiagnostic Report" on September 17,

3  2010. (AR 351-352.)  Plaintiff "present[ed] with complaints of numbness and pain in his left arm

4  and left leg for past couple of years.  He has noticed some numbness in his left hand when he is

5  holding something in his hand." (AR 351.)  The report indicates that Plaintiff's results were

6  "abnormal" and suggested "median nerve neuropathy at the wrist on the left side." (AR 352.)

7  Dr. Dhaliwal. opined that "[t]his is consistent with moderate carpal tunnel syndrome on the left

8  side." (AR 352.)

9          On February 16, 2010, Plaintiff was treated at the "Emergency Department" at Doctors

10  Medical Center in Modesto, California and diagnosed with "COPD – bronchitis" and

11  hypertension. (AR 367.)  Plaintiff was seen for a follow up at Golden Valley Health Center on

12  February 17, 2010. (AR 379-380.)  Plaintiff's "[b]reathing [was] slow and deliberate." (AR

13  379.)

14          On March 1, 2010, Plaintiff was seen at Golden Valley Health Center for paperwork and

15  for refills for his medications. (AR 372-374.)  Plaintiff reported that his "meds are not helping

16  with the chronic pain in his right femur and his left arm." (AR 372.)  The examiner noted "mild

17  to moderate discomfort when getting up from his chair and ascending the exam table...mostly in

18  his back" and "[v]ery short of breath when speaking more than 4 or 5 words at a time." (AR

19  373.)  Plaintiff was given nebulizer treatments and refills on his medications. (AR 373.)

20          On April 29, 2010, Plaintiff was seen at Golden Valley Health Center for medication

21  refills. (AR 375-377.)  The report notes that Plaintiff's "[b]reathing is effortless and normal."

22  (AR 376.)

23          On August 12, 2010, a "c-spine" exam was performed showing "[m]ultilevel degenerative

24  disc disease changes and uncovertebral hypertrophic changes causing some encroachment of

25  neural foramina bilateral...." (AR 345, 350.)

26          **D.      The ALJ's Findings**

27          The ALJ made the following findings of fact and conclusions of law:

28      •   Plaintiff has not engaged in substantial gainful activity since August 3, 2009;

- The claimant has the following severe impairments: status post open reduction internal fixation of right femur, obesity and personality disorder;

- The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

- Plaintiff has the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently, can stand, walk and sit for six hours in an eight hour workday, can never work around hazards or concentrated pulmonary irritants, can never climb ladders, ropes or scaffolds, can only occasionally climb ramps and stairs and can only perform simple routine tasks;

- Plaintiff has no past relevant work;

- Plaintiff was born on July 19, 1958, making him approximately 54 years old;

- Plaintiff can perform jobs that exist in significant numbers in the national economy; and

- Plaintiff has not been under a disability since August 3, 2009.

(AR 15-21.)

## II.

### LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,

1    698 F.3d at 1159 (quoting <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).

2    However, it is not this Court's function to second guess the ALJ's conclusions and substitute the

3    Court's judgment for the ALJ's.   <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)

4    ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

5    conclusion that must be upheld.")

6                                                                      **III.**

7                                                    **DISCUSSION AND ANALYSIS**

8              Plaintiff argues that this matter should be remanded back to the Commissioner for two

9    reasons.  First, Plaintiff contends that medical evidence presented to the Appeals Council after the

10   ALJ made his decision was improperly rejected.   Second, Plaintiff contends that the ALJ gave

11   insufficient reasons to reject the opinions of the treating physicians that were presented to him.

12       **A.       The New Evidence Submitted to the Appeals Council After the ALJ's**
                **Decision is Part of the Administrative Record for Purposes of Reviewing the**
13              **ALJ's Decision**

14              Plaintiff argues that "[n]either the ALJ or the Appeals Council gave any reasons to reject

15   the [new evidence submitted after the ALJ issued his decision], leaving the ALJ's decision tainted

16   by legal error."   (Pl.'s Opening Brief 7:16-18.)   To the extent that Plaintiff argues that the

17   Appeals Council committed legal error by failing to articulate grounds rejecting this new

18   evidence, this argument fails because the Appeals Council need not provide "a detailed rationale

19   whenever faced with new evidence."   <u>Taylor v. Commissioner of Social Sec. Admin.</u>, 659 F.3d

20   1228, 1232 (9th Cir. 2011) (internal quotations and citations omitted).   However, this new

21   evidence nonetheless becomes part of the administrative record and the Court must consider the

22   record as a whole, including this new evidence, when determining whether the ALJ's erred.

23   <u>Brewes v. Commissioner of Social Sec. Admin.</u>, 682 F.3d 1157, 1163 (9th Cir. 2012).

24              Defendant argues that this new evidence does not "relate to the relevant time period"

25   because some of the questionnaires are dated after the ALJ's March 25, 2011 decision.  (Def.'s

26   Opp'n 9:10-12.)  Defendant argues that some of the impairments identified in a May 3, 2011

27   questionnaire completed by Mr. Kitchell were absent from Mr. Kitchell's November 2010

28   questionnaire.  Even assuming, for the sake of argument, that the "new" impairments in the May

                                                                        8

1    2011 questionnaire are reflective of impairments that began sometime between November 2010

2    and May 2011, these impairments remain relevant because Plaintiff applied for SSI benefits,

3    which does not require Plaintiff to demonstrate that his disability began during a particular period

4    of time.  Plaintiff is entitled to SSI benefits even if he was not considered disabled until after

5    these new impairments appeared.[2]

6         The Court must consider the new evidence submitted to the Appeals Council after the ALJ

7    issued his decision.  For the reasons set forth in more detail below, the Court finds that,

8    considering the record as a whole, the ALJ erred.  The Court will remand this action for further

9    administrative proceedings, including consideration of the new evidence submitted to the Appeals

10   Council.  See Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1233 (9th Cir.

11   2011) ("Where the Appeals Council was required to consider additional evidence, but failed to do

12   so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the

13   additional evidence).

14        **B.      The ALJ Erred in Rejecting Mr. Kitchell/Dr. Westrup's Medical Opinions**

15        Plaintiff argues that the ALJ gave insufficient reasons to reject the opinions of Mr.

16   Kitchell and Dr. Westrup.[3]  "By rule, the Social Security Administration favors the opinion of a

17   treating physician over non-treating physicians."  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.

18   2007).  "If a treating physician's opinion is 'well-supported by medically acceptable clinical and

19   laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

20   [the] case record, [it will be given] controlling weight.'"  Id. (quoting 20 C.F.R. §

21   404.1527(d)(2)).  "If a treating physician's opinion is not given 'controlling weight' because it is

22   not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the

23   _____

24   [2] SSI benefits under Title XVI are distinguishable from disability insurance benefits (DIB) provided under Title II.
     DIB benefits require the claimant to have "insured status," which require sufficient earnings from covered
25   employment.  See 42 U.S.C. § 423(a), (c).  In contrast, SSI benefits do not require a claimant to have "insured status"
     and is available to anybody who is aged, blind or disabled and whose income does not exceed the statutorily defined
26   limits.  See 42 U.S.C. § 1382(a).

27   [3] Plaintiff characterizes the opinions of Mr. Kitchell and Dr. Westrup as medical opinions from a treating source.
     Neither the ALJ nor Defendant disputes this characterization.  (See Def.'s Opp'n 7:22-24 ("the ALJ did not state that
28   Mr. Kitchell was not an acceptable medical source, nor did he state that this was a consideration in giving Mr.
     Kitchell's assessment less weight.").)

9

1   Administration considers specified factors in determining the weight it will be given." Id.  These

2   factors include the length of the treatment relationship and the frequency of examination and the

3   nature and extent of the treatment relationship.  Id.  Additional factors applicable when evaluating

4   any medical opinion, not just those of treating physicians, include the amount of relevant

5   evidence supporting the opinion, the quality of the explanation provided, the consistency of the

6   medical opinion with the record as a whole, the specialty of the physician providing the opinion,

7   and "other factors" such as the degree of understanding a physician has of disability programs and

8   their evidentiary requirements and the degree of familiarity with other information in the case

9   record.  Id.

10       "Generally, the opinions of examining physicians are afforded more weight than those of

11  non-examining physicians, and the opinions of examining non-treating physicians are afforded

12  less weight than those of treating physicians." Id. (citing 20 C.F.R. § 404.1527(d)(1)-(2)).  When

13  a treating physician's opinion is not contradicted by another doctor, it may only be rejected for

14  clear and convincing reasons supported by substantial evidence in the record.  Id. (quoting

15  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).  Even if a treating physician's opinion is

16  contradicted by another doctor, the ALJ may not reject this opinion without providing specific

17  and legitimate reasons supported by substantial evidence in the record.  Id. (quoting Reddick, 157

18  F.3d at 725).  "The ALJ must do more than offer his conclusions.  He must set forth his own

19  interpretations and explain why they, rather than the doctors', are correct." Id. (internal

20  quotations and citations omitted).

21       Although the medical record includes four questionnaires signed by Mr. Kitchell and/or

22  Dr. Westrup, the only questionnaire available to the ALJ was the questionnaire dated November

23  16, 2010.  (AR 353-355.)  The ALJ gave Mr. Kitchell's opinions "reduced weight."  (AR 19.)

24  The ALJ noted that Mr. Kitchell attributed Plaintiff's limitations to a head injury suffered in his

25  teens, "but apparently did not complain of left-sided weakness until recently."  (AR 19.)  The ALJ

26  further noted that "the evidence does not support a finding of significant limitations from

27  degenerative disc disease until possibly August 12, 2010 if at all."  (AR 19.)

28  / / /

The two reasons cited by the ALJ do not constitute specific and legitimate reasons to reject Mr. Kitchell and Dr. Westrup's opinions.  The first reason cited by the ALJ (no complaints of left-sided weakness from old head injury until recently) is not persuasive because it is unclear that Mr. Kitchell and Dr. Westrup attributed Plaintiff's left-sided weakness to the head injury suffered when Plaintiff was in his teens.  The Questionnaire states "(L) arm, (L) leg muscle weakness 2d to brain injury," but never specifically mentions the injury Plaintiff suffered in his teens.  (AR 353.)  Notably, at the hearing before the ALJ, Plaintiff indicated that his left-sided weakness stemmed from a stroke that Plaintiff at some unspecified point in time.  (AR 31.) Accordingly, Mr. Kitchell and Dr. Westrup may have been referred to some other brain injury, such as a more recent stroke.  Since it is unclear whether the left-sided weakness is secondary to the head injury from Plaintiff's teens or whether it is secondary to a more recent stroke, the fact that Plaintiff did not complain of left-sided weakness until recently is not grounds to reject Mr. Kitchell/Dr. Westrup's opinions.

The second reason cited by the ALJ (no significant limitations from degenerative disc disease until August 2010) does not constitute a specific and legitimate reason to discredit Mr. Kitchell and Dr. Westrup's opinion.  It may be the case that Plaintiff did not develop significant limitations until recently, in which case the ALJ should have made findings as to whether Plaintiff is currently disabled in light of those new limitations.  The non-examining physicians opined that the findings from the February 8, 2008 MRI were "mild" (AR 305), but did not have an opportunity to review the August 12, 2010 report which indicated that Plaintiff suffered from multilevel degenerative disc disease (AR 345, 350.)  Accordingly, the record indicates that Plaintiff's condition may have worsened significantly between February 2008 and August 2010. The fact that evidence does not support a finding of significant limitations from degenerative disc disease until recently is not a legitimate reason to discredit the opinions expressed in Mr. Kitchell and Dr. Westrup's questionnaire.

Neither the ALJ nor the Appeals Council provided any other reasons to reject Mr. Kitchell and Dr. Westrup's opinions.  This is significant because this Court is constrained on appeal to reviewing "only the reasons provided by the ALJ in the disability determination and may not

1    affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th

2    Cir. 2007).  The record indicates that Plaintiff had a history of malingering, lying about or

3    exaggerating his symptoms to obtain drugs and there is some suggestion that Plaintiff lied to the

4    ALJ about being drug-free since September 2007.[4]   Although the ALJ cited Plaintiff's

5    malingering and prior history of exaggerated symptoms to discredit Plaintiff's statements

6    concerning the intensity, persistence and limiting effect of his symptoms, the ALJ did not

7    conclude that Plaintiff's lack of credibility tainted Mr. Kitchell and Dr. Westrup's medical

8    findings.  Accordingly, the Court cannot affirm the ALJ's rejection of the medical evidence based

9    on Plaintiff's lack of credibility.  The Court also notes that all four questionnaires authored by

10   Mr. Kitchell and Dr. Westrup appear to be brief, conclusory and inadequately supported by

11   clinical findings, which could have served as a basis to reject the opinions expressed therein.  See

12   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of

13   any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

14   supported by clinical findings.").  Again, the ALJ did not rely on this ground and therefore the

15   Court may not affirm on this basis.

16        Based upon the foregoing, the Court concludes that the ALJ did not cite proper reasons to

17   reject the opinions of Mr. Kitchell and Dr. Westrup.  Accordingly, the ALJ erred in rejecting Mr.

18   Kitchell and Dr. Westrup's medical opinions.

19        **C.    Remand for Further Proceedings**

20        Plaintiff argues that the Court should remand this action with instructions to immediately

21   award benefits.  "Remand for further administrative proceedings is appropriate if enhancement of

22   the record would be useful."   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

23   "Conversely, where the record has been developed fully and further administrative proceedings

24   would serve no useful purpose, the district court should remand for an immediate award of

25   benefits."  Id.  "More specifically, the district court should credit evidence that was rejected

26   during the administrative process and remand for an immediate award of benefits if (1) the ALJ

27

28

[4] Notes from a physical on July 13, 2008 indicates that Plaintiff tested positive for PCP.  (AR 234, 305.)  At the February 2011 hearing, Plaintiff testified that he had been drug-free since September 2007.  (AR 33.)

12

1   failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding

2   issues that must be resolved before a determination of disability can be made; and (3) it is clear

3   from the record that the ALJ would be required to find the claimant disabled were such evidence

4   credited." Id. (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)).

5          Here, there are outstanding issues that must be resolved before a determination of

6   disability can be made.  First, the new evidence submitted to the Appeals Council after the ALJ

7   issued his decision must be assessed.  These include subsequent questionnaires authored by Mr.

8   Kitchell and Dr. Westrup that differ from the opinions in the November 2010 questionnaire.[5]  In

9   Taylor, 659 F.3d at 1233, the Ninth Circuit held that in the new evidence submitted to the

10   Appeals Council for the first time after the ALJ rendered his or her decision, courts should

11   remand to the ALJ for assessment and did not include instructions that such evidence should be

12   credited as true.  Accordingly, on remand, the ALJ should reassess Plaintiff's RFC in light of the

13   new evidence and reassess whether Plaintiff can perform any work, which may entail additional

14   testimony from the VE and additional findings by the ALJ.

15                                               **IV.**

16                          **CONCLUSION AND RECOMMENDATION**

17          For the reasons set forth above, the Court finds that the ALJ erred in rejecting the medical

18   opinions of Mr. Kitchell and Dr. Westrup as expressed in the November 2010 questionnaire.

19   However, the Court denies Plaintiff's request to remand with instructions to immediately award

20   benefits.  The Court finds that remand for further administrative proceedings is appropriate to

21   reassess Plaintiff's RFC in light of the new medical evidence submitted to the Appeals Council

22   after the ALJ rendered his decision.

23          Accordingly, it is HEREBY RECOMMENDED that:

24   1.       Plaintiff's appeal from the final decision of Defendant Commissioner of Social

25              Security be PARTIALLY GRANTED;

26

27   [5] The most significant discrepancy is that the November 2010 and May 2011 Kitchell/Westrup questionnaires opined
     that Plaintiff could sit for a full eight hours during an eight hour day (AR 353, 471) whereas the December 2011
28   Westrup questionnaire opines that Plaintiff could only sit for two to three hours in an eight hour day (AR 462).

2.      That this case be remanded for further administrative proceedings; and

3.      That judgment be entered in favor of Plaintiff Timothy Mitts and against Defendant Commissioner of Social Security.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __July 13, 2013__

_____
UNITED STATES MAGISTRATE JUDGE

14